IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRAD LEE JONES,                          )
                                         )
                    Petitioner,          )
                                         )
          v.                             )        CASE NO.  09-3171-WEB
                                         )
DAVID R. McKUNE,                         )
                                         )
                    Respondent.          )
_____)

## MEMORANDUM AND ORDER

This matter is before the court upon a petition for writ of habeas corpus, 28 U.S.C. § 2254, in which the petitioner seeks to have his state convictions overturned. He argues that the evidence was insufficient for the jury to find him guilty.

I. *Facts*

The Kansas Court of Appeals (KCA), in its unpublished opinion on direct appeal of petitioner's convictions, derived the following factual summary "from the trial testimony of the two victims as well as other witnesses":

> Jones' 15-year-old son, C.J., testified that he was in the kitchen of his home playing video games when he went into the living room to see what his father was watching on television. Jones was seated on the couch wearing no clothes but covered by a sleeping bag, watching a football game.
>
> C.J. testified that Jones motioned for C.J. to come to him and told C.J. to drop his pants. After C.J. took off his pants and underwear, Jones placed his penis in C.J.'s rectum. C.J. was on the couch on his arms and knees when this happened. According to C.J., Jones told him not to tell anyone what had happened because Jones did not want to go to jail.
>
> C.J. testified on direct examination that he thought the act occurred on Saturday, December 10, 2005, while the Kansas City Chiefs were playing football on television. On cross-examination, C .J. responded, "I think so," when

asked if he was sure the Chiefs were playing. C.J. testified he believed the incident occurred on a Saturday and not a Sunday because the family went to church on Sunday mornings.

The defense offered a copy of the Kansas City Star dated December 11, 2005, to establish that the Chiefs were scheduled to play on Sunday, December 11 but not on Saturday, December 10.

Social and Rehabilitation Services (SRS) social worker Kolissa Tate testified she interviewed C.J. on December 13, 2005. C.J. described to Tate how his father had touched him inappropriately at the family's home. Based upon C.J.'s statement of the facts, Tate concluded the act had occurred on the previous Saturday, December 10, 2005.

Atchison County Sheriff's Deputy Jason Hundley testified he interviewed C.J. on December 14, 2005. C.J. was nervous and scared during the interview, so Hundley interviewed C.J.'s sister before again interviewing C.J. During the second interview, C.J. told Hundley that his father had rubbed C.J.'s private parts, placed his finger in C.J.'s anus, had anal sex with C.J. and required C.J. to perform oral sex on him.

Atchison County Sheriff's Deputy Toby Pennington testified he interviewed C.J. on December 15, 2005. C.J. told Deputy Pennington that Jones had touched C.J.'s penis and anus and placed his finger and penis in C.J.'s rectum. C.J. also said Jones called C.J. after SRS began investigating and asked C.J. not to tell SRS any more about the incident.

Jones' daughter, N.J., testified that on a school day during the late summer or fall of 2005, her father was sitting naked on the couch when he asked N.J. to scratch his back. N.J., who was 15 at the time, did as her father requested. Jones then scratched N.J.'s back and eventually began to rub her breasts. N.J. told her father to stop and he responded that she should just "relax" and he continued to rub her breasts.

C.J.'s mother testified C.J. has a learning disability and an I.Q. in the mid-70's. C.J. requires special education in math and written language and has trouble memorizing and remembering dates.

According to C.J.'s mother, after the investigation of Jones' had begun, Jones attempted to telephone her several times in one day. Later in the same day, Jones came to the family's home, took his gun, and left. She called 911, and the police responded. While police were at the home, Jones phoned the children's mother and indicated he might hurt himself. Jones said he was sorry for hurting

the kids and that he could not control himself.

Atchison County Undersheriff Larry Myers testified that when Jones was arrested later that day, he told officers that he had planned to go to his parents' graves and kill himself with the gun he had taken from the home. Jones told the officers he had ruined his life and the lives of his children and he was sorry for what he had done.

Jones testified at trial, denying the allegations of both C.J. and N.J. Jones claimed he contemplated suicide because his reputation had been ruined by the allegations. Jones testified regarding his work hours and military commitments during the time period in question, and suggested it would have been impossible for him to commit the crimes on the dates claimed by his children.

State v. Jones, 182 P.3d 736, *1-*2 (Kan.App. 2008). These facts are presumed to be correct. See Pickens v. Gibson, 206 F.3d 988, 993 (10th Cir. 2000)(citing 28 U.S.C. § 2254(e)(1)). The court also finds from its own independent review that these facts are supported by the record.

II. *History*

The jury convicted Mr. Jones of two counts of aggravated indecent liberties with a child (one involving each child) and one count of aggravated indecent solicitation of a child. The jury was unable to reach a verdict as to the charge of aggravated criminal sodomy. The trial court sentenced Mr. Jones to consecutive prison terms of 43 months, 43 months, and 19 months, but reduced the total sentence to 86 months in compliance with a state statute limiting sentencing on multiple convictions. Petitioner directly appealed his convictions to the KCA, which affirmed on May 9, 2008. The Kansas Supreme Court denied a petition for review on September 24, 2008.

The instant federal Petition was filed on August 4, 2009.

Respondents have filed an Answer and Return, and petitioner filed a Traverse. The court has thoroughly reviewed all pleadings together with the pertinent state court records and relevant legal authority. For reasons that follow, the court determines that Mr. Jones has failed to establish his entitlement to relief and therefore denies the Petition.

III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the court's review of petitioner's claims. Under § 2254, as amended by the AEDPA, the Court may not grant federal habeas corpus relief unless the applicant establishes that the state court's adjudication of the claims resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 404-05 (2000)(citing id.); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001), cert. denied, 537 U.S. 835 (2002).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Bell v. Cone, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of

materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>Gipson v. Jordan</u>, 376 F.3d 1193, 1196 (10th Cir. 2004), <u>cert</u>. <u>denied</u>, 546 U.S. 1030 (2005). "Under the 'unreasonable application' clause, . . . the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable'." <u>Williams</u>, 529 U.S. at 409; <u>House v. Hatch</u>, 527 F.3d 1010, 1018-19 (10th Cir. 2008), <u>cert</u>. <u>denied</u>, 129 S.Ct. 1345, 173 L.Ed.2d 613 (Feb. 23, 2009)(The Supreme Court has concluded that "an unreasonable application constitutes more than an incorrect application of federal law.")(citing <u>id</u>. at 377, 410; <u>see</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)(It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.)). The Tenth Circuit explained that "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." <u>Id</u>. (citing <u>Maynard v. Boone</u>, 468 F.3d 665, 671 (10th Cir. 2006), <u>cert</u>. <u>denied</u>, 549 U.S. 1285 (2007)).

A criminal defendant has a federal due process right against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)(citation omitted). The standard for reviewing a claim that the evidence was insufficient is supplied by <u>Jackson v. Virginia</u>. <u>Dockins v. Hines</u>, 374 F.3d 935, 939 (10th Cir. 2004)(quoting <u>id</u>. at 319). When reviewing such claims the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319.

Because sufficiency of the evidence is a "mixed question of law and fact", the court asks "whether the facts are correct and whether the law was properly applied to the facts"; and thus applies "both 28 U.S.C. § 2254(d)(1) and (d)(2)." Maynard, 468 F.3d at 673; but see Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir.)(The Tenth Circuit has not resolved whether the court should review a sufficiency of the evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1).), cert. denied, 537 U.S. 1023 (2002).

The AEDPA "adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions." Patton v. Mullin, 425 F.3d 788, 796 (10th Cir. 2005), cert. denied, 547 U.S. 1166 (2006); see Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000)("Under AEDPA, however, where a habeas petitioner's sufficiency of the evidence challenge has already been decided in state court, we employ a more limited review."), cert. denied, 532 U.S. 979 (2001). The United States Supreme Court recently discussed the "deferential review that Jackson and § 2254(d)(1) demand":

> A federal habeas court can only set aside a state-court decision as "an unreasonable application of . . . clearly established Federal law," § 2254(d)(1), if the state court's application of that law is "objectively unreasonable," (Williams, 529 U.S. at 409). And Jackson requires a reviewing court to review the evidence "in the light most favorable to the prosecution." (443 U.S. at 319). Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." (Id. at 326; see also Schlup v. Delo, 513 U.S. 298, 330 (1995))("The Jackson standard . . . looks to whether there is sufficient evidence which, if credited, could support the conviction").

McDaniel v. Brown, __U.S.__, 130 S.Ct. 665, 673 (Jan. 11,

2010)(citations shortened); <u>Turrentine v. Mullin</u>, 390 F.3d 1181, 1197 (10th Cir. 2004)(Our review under this standard is "sharply limited", and "a court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'.")(citing <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting <u>Wright v. West</u>, 505 U.S. 277, 296-97 (1992)), <u>cert</u>. <u>denied</u>, 545 U.S. 1106 (2005).

"This standard reflects our system's long-standing principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." <u>Turrentine</u>, 390 F.3d at 1197; <u>Patton</u>, 425 F.3d at 796. Under <u>Jackson</u>, "the assessment of the credibility of witnesses is generally beyond the scope of review." <u>Schlup</u>, 513 U.S. at 330. A reviewing court may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. <u>See</u> <u>Jackson</u>, 443 U.S. at 318-19; <u>Kelly v. Roberts</u>, 998 F.2d 802, 808 (10th Cir. 1993)(We must accept the jury's resolution of the evidence as long as it is within the bounds of reason.). Nor may the court ask whether a finder of fact could have construed the evidence produced at trial to support acquittal. <u>Jackson</u>, 443 U.S. at 326.

In his Traverse, petitioner requests an evidentiary hearing. A claim of sufficiency of the evidence "can almost always be judged on the written record without need for an evidentiary hearing in federal court." <u>Id</u>. at 322. The court finds an evidentiary hearing is unnecessary in this case because petitioner's claim "can be

resolved on the record," and Mr. Jones has not shown that "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." Anderson v. Attorney General of Kan., 425 F.3d 853, 858-59 (10th Cir. 2005)(citing Torres v. Mullin, 317 F.3d 1145, 1161 (10th Cir.), cert. denied, 540 U.S. 1035 (2003)); see also 28 U.S.C. § 2254(e)(2).


IV. *Discussion*

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 FN16; Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003); Diestel v. Hines, 506 F.3d 1249, 1267 (10th Cir. 2007), cert. denied, 128 S.Ct. 2875, 171 L.Ed.2d 812 (2008). Petitioner was convicted of offenses defined in K.S.A. § 21-3504[1] and § 21-3510[2]. The Information in this case specifically charged in Count III:

> That on or about the 10th day of December of 2005 here in Atchison County, Kansas one BRAD LEE JONES . . . did unlawfully and feloniously engage in any lewd fondling or touching of the person of either the child, to-wit: C.J.

---

[1]    K.S.A. § 21-3504 provides in pertinent part:

(a) Aggravated indecent liberties with a child is:

> . . . (2) engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age and who does not consent thereto:

> (A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both . . . .

[2]    K.S.A. § 21-3510 pertinently provides:

(a) Indecent solicitation of a child is:

> (1) Enticing or soliciting a child 14 or more years of age but less than 16 years of age to commit or to submit to an unlawful sexual act . . . .

. . . a child 14 or more years of age but less than 16 years of age who does not consent thereto, or the offender, . . . with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both, to-wit: rubbed his hands on the victims (sic) penis and anus, contrary to K.S.A. 21-3504: AGGRAVATED INDECENT LIBERTIES WITH A CHILD, a severity level 4 person Felony.

Appellate Court Record, Case No.06-96894, Vol. I, at 23. In Count IV, it charged:

That during the August or September of 2005 here in Atchison County, Kansas, one BRAD LEE JONES . . . did unlawfully and feloniously engage in any lewd fondling or touching of the person of either the child, to-wit: N.J. . . . a child 14 or more years of age but less than 16 years of age who does not consent thereto, or the offender, . . . with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both, to-wit: rubbed his hands on the victims breasts, contrary to K.S.A. 21-3504(a)(2)(A): AGGRAVATED INDECENT LIBERTIES WITH A CHILD, a severity level 4 person Felony.

Id. In Count V, it charged:

That on or about the 10th day of December of 2005 here in Atchison County, Kansas, one BRAD LEE JONES . . . did unlawfully and feloniously entice or solicit a child 14 or more years of age but less than 16 years of age, to-wit: C.J. . . . to commit or to submit to an unlawful sexual act, to-wit: Sodomy as defined by K.S.A. 21-3501, contrary to K.S.A. 21-3510: INDECENT SOLICITATION OF A CHILD, a severity level 6 person Felony.

Id. at 24. In Instruction No. 9, the trial judge charged the jury that to establish the crime of aggravated indecent liberties with a child, "each of the following claims must be proved":

1. That the defendant fondled or touched the person of (CJ) in a lewd manner, with intent to arouse or to satisfy the sexual desires of either (CJ) or the defendant, or both;
2. That at the time of the act (CJ) was a child 14 or more years of age but less than 16 years of age;

3. That (CJ) did not consent to such fondling or touching: and

4. That this act occurred on or about the 10th day of December, 2005, in Atchison County, Kansas.

Id. at 41. Instruction No. 10 was identical, except the name of the

victim was NJ and claim (4) provided: "That this act occurred on or about August to September, 2005, in Atchinson County, Kansas." Id. at 42. In Instruction No. 11, the court charged that in order to prove the crime of indecent solicitation of a child "each of the following claims must be proved":

> 1. That the defendant enticed or solicited (CJ) to commit or submit to an act of aggravated criminal sodomy;
>
> 2. That (CJ) was then 14 or more years of age but less than 16 years of age; and
>
> 3. That this act occurred on or about the 10th day of December, 2005, in Atchison County, Kansas.

Id. at 43. Thus, the elements of the crimes set forth in the state criminal statutes were plainly incorporated into the Information and the jury instructions in this case.

Trial defense counsel filed motions for judgment of acquittal, for departure at sentencing, for mistrial, and for new trial, all based upon the argument that the evidence adduced at trial was insufficient to convict because there was no evidence that the defendant committed the crimes on the dates alleged. On direct appeal to the KCA, Mr. Jones argued he was "denied due process because the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt of crimes occurring on the dates charged in the information[3]." State v. Jones, 182 P.3d 736 at *2.

---

[3] Jones alleged in his Brief of Appellant:

Prior to the preliminary hearing, the State alleged that two of the charges took place "during the preceding 12 months prior to December of 2005". (R. I, 8-9). In response, Mr. Jones filed a motion for a bill of particulars . . . (R. I, 17). At the conclusion of the preliminary hearing, the district court required the State to file an amended information to reflect that the charges relating to C.J. occurred on or about December 10, 2005, and that the charges related to N.J. occurred in August or September of 2005. (R. II, 17-18). . . . . Mr. Jones filed a notice of alibi indicating that he was not home at the time and date of the alleged offenses against C.J. and that he was at work and then on active military duty during period of

The KCA adjudicated petitioner's claim under the following standard:

> When a defendant challenges the sufficiency of the evidence, this court's standard of review is whether, after a review of all the evidence, viewed in a light most favorable to the State, the court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. <u>See</u> <u>State v. Parker</u>, 282 Kan. 584, 597, 147 P.3d 115 (2006). We do not determine the credibility of witnesses, and we resolve any questions of credibility in favor of the State. <u>See</u> <u>State v. Lowe</u>, 276 Kan. 957, 965, 80 P.3d 1156 (2003).

<u>Id</u>. Thus, the sufficiency-of-the-evidence standard applied by the KCA was at least as strict as that in <u>Jackson</u>. Petitioner stipulates that the state appellate court "applied the correct Supreme Court precedent." <u>Supplement to Petition</u> (Doc. 2)(hereinafter <u>Supp.</u>) at 8. Accordingly, this court's review of the KCA's decision is "strictly limited" by AEDPA deference. <u>See</u> <u>Turrentine</u>, 390 F.3d at 1197; <u>Patton</u>, 425 F.3d at 795 (granting AEDPA deference to state-court decisions that applied a legal standard either identical to the federal standard or more favorable to the habeas applicant than the federal standard); <u>Epperson v. Mullin</u>, 351 Fed.Appx. 311, 314 (10th Cir. 2009); <u>Harris v. Poppell</u>, 411 F.3d 1189, 1196 (10th Cir. 2005).

Petitioner claims before this court that the state's evidence was insufficient because he presented an ironclad alibi as to each charge. With respect to CJ, he argues that he proved he was not at home in the afternoon on December 10, 2005, and thus could not possibly have committed acts against CJ at that specific time. As

---

time" of alleged offense against N.J. (R. I, 23-24, 27).

<u>State v. Jones</u>, App.Ct. Case No. 06-96894, <u>Brief of Appellant</u> (Jan. 9, 2007) at 10.

factual support, he points to his testimony, his work manager's testimony, and exhibits of his hourly work record for that day, indicating he left home for work around 11:30 a.m., worked at O'Reillys from 12:30 p.m. to 9:30 p.m., and returned home around 10:30 p.m. State v. Jones, Dist.Ct. Case No. 2005 CR 767, App.Ct. Case No. 06-96894, Transcript, Vol. IX (hereinafter T.) at 167, 178. With respect to NJ, Jones argues that he proved he had no opportunity to be at home with her except very late after school when everyone else was there. T. at 175-77. In support, he points to his testimony that he was not at home during the hours immediately after school on August 22 through September 3, 2005, or on September 30, 2005, because his usual work hours were until 7:00 p.m., his Fridays were dedicated to the Army Reserve in Missouri, and he left for California on September 4, 2005, for extended military duty and did not return until September 29, 2005. T. at 179.

Petitioner appears to argue that the dates and times introduced through the victims' trial testimony were more specific than the time frames in the Information, and that the court and jury were limited to considering his acts during those "narrowed" times[4]. On this basis, he contends that the jury could not "reasonably infer" that the illicit acts happened earlier in the day or on the next

_____

[4] Defense counsel, on motion for directed verdict argued they had shown that CJ believed the crimes against him occurred on the afternoon of December 10, 2005, and that defendant was "not present at that time." They also argued that the crime against NJ was alleged to have occurred sometime between August 22 and September 3, 2005, after school on a weekday, and Mr. Jones was unavailable during those times. T. at 197-99. The State countered that the charges against CJ were alleged to have occurred "on or about the 10th of December", and that NJ had at one point said the acts against her occurred in the morning. The State argued "there's plenty of time there where these acts could have possibly occurred." T. at 200. The trial court denied the motion, finding "there's enough evidence to submit it to the jury." T. at 201.

day, and that since he presented an alibi for the narrowed times, he proved it was impossible for him to have committed the crimes as charged.  Supp. at 10.  Petitioner additionally claims that the trial court repeatedly reminded the jury that they could only consider the record evidence and that the state had charged "a specific time", but neither the jury nor the state appellate court adhered to these "principles".

The KCA thoroughly discussed petitioner's claim and the evidence, and reasoned as follows:

> Jones suggests that a rational jury could not have concluded beyond a reasonable doubt that Jones committed the acts against C.J. on or about December 10, 2005, as charged.  Jones points out that C.J. testified that the act occurred on Saturday, December 10, 2005, while the Chiefs game was on television.  Jones established, however, that he was at work that Saturday afternoon and the Chiefs did not play until Sunday, December 11, 2005.  Additionally, Jones claims that although he watched the Chiefs' game on television on Sunday, he watched it alone.

> Despite Jones' evidence regarding his work schedule and the date of the Chief's game, a rational jury could nevertheless have found beyond a reasonable doubt that Jones had adequate opportunity to commit the offense within the time period charged in the complaint.

> First, the evidence showed that C.J., a minor, possessed a mid-70's I.Q., and had difficulty memorizing and recalling dates in various contexts.  Further, C.J. received special education in school for math and written language.  Additionally, the SRS worker who interviewed C.J. only a few days after the incident testified she concluded the incident occurred on Saturday, December 10, 2005, because C.J. told her that it did not happen on a school day or a day that he went to church.  The SRS worker included this date in her report to the police, and each officer referenced this date in subsequent interviews with C.J.  The jury could have believed that C.J. was confused about the date of the incident, or that he simply adopted December 10 as the date of the incident.

> Further, as the State points out, it is also possible the jury believed the incident occurred either before Jones went to work or after Jones returned from work on Saturday, December 10.  C.J. testified he and Jones were watching a football game on television when the incident

occurred, and the jury could have believed that C.J. simply was mistaken that it was a Chief's game.

Finally, while C.J. may have had a diminished capacity to understand or recall the exact date and time of the incident, his statements to the SRS worker and to law enforcement officers, as well as his trial testimony, demonstrated that he clearly was aware of, and remembered, the sexual acts inflicted upon his person by his father.

Under these circumstances, a rational jury could have concluded beyond a reasonable doubt that Jones had adequate opportunity to commit the offense "on or about" December 10, 2005.

Jones, 182 P.3d 736, at *2-*3. The court made similar findings with respect to the charges involving NJ:

Jones was charged with committing the acts against C.J.'s sister, N.J., "during August or September 2005." At trial, N.J. had difficulty pinpointing the date and time of the offense. She first testified the incident took place in the morning on a school day, and later said it occurred after school. However, like C.J., N.J. recalled the offense Jones committed against her and explicitly testified about the offense.

Jones offered alibi evidence showing that on certain school days in August and September 2005, he was at his place of employment between 10 a.m. and 7 p.m. and that he was on active military duty in California from Sunday, September 4, 2005, until Thursday, September 29, 2005. Jones again suggests his alibi evidence conclusively proves that he could not have committed the act alleged by N.J. during the dates charged in the information. However, Jones' alibi does not cover any day before school during August or any time after school during the last 2 weeks of August. Nor does it cover the school day of Friday, September 30, 2005.

Id. at *3-*4. The court also discussed the testimony of other witnesses:

[T]he children's mother testified that after the investigation of Jones had begun, Jones threatened to hurt himself and apologized for "hurting the kids," saying he "had no control" and "couldn't stop himself." Finally, the undersheriff testified that when Jones was arrested, he threatened to commit suicide and expressed regret for what he had done to his children and his family. From this testimony, a rational jury could infer that Jones admitted committing criminal acts against his children.

14

> Under these circumstances, a rational jury, weighing the
> evidence and the witnesses' credibility, could have
> concluded beyond a reasonable doubt that the offense
> against C.J. occurred on or about December 10, 2005, and
> the offense against N.J. occurred "during August or
> September 2005."

Id. at *4.

Petitioner's arguments challenging this state court adjudication are not persuasive. First, the relevant time periods were those in the Information and jury instructions, and they were not "conclusively narrowed" to more specific dates and particular times of day by the trial testimony of the two victims[5]. Second, as the state appellate court found, petitioner's evidence did not conclusively establish that it was impossible for him to have committed the offenses within the relevant time frames.

It is clear from the record in this case that despite defense counsel's efforts to coax unequivocal declarations from the victims as to a specific date and time of day that the acts occurred, their overall testimony together with the other evidence at trial reflected the victims were uncertain and vague rather than conclusive as to those details. The KCA discussed the vagueness of the temporal evidence in this case and reasoned as follows:

> [V]agueness with respect to the date of an offense is not
> rare when children's memories are involved, especially as
> time passes. Although a child may have diminished
> capacity to understand dates and times, it is reasonable
> that a "child will be well aware of, and remember, sexual
> acts inflicted upon [his or] her person." Moreover, the
> exact time of commission of indecent liberties with a
> child is not an "indispensable ingredient" of the crime,

---

[5] Even in federal cases, a variance between the date of the crime set forth in the Information and the proof at trial is not fatal as long as the acts alleged were committed within the statute of limitations and before the date of the indictment. See United States v. Harris, 344 F.3d 803, 805 (8th Cir. 2003), cert. denied, 540 U.S. 1201 (2004). The information in this case is not alleged to have violated those requirements. See Ledbetter v. United States, 170 U.S. 606, 612 (1898); United States v. Nunez, 668 F.2d 1116, 1127 (10th Cir. 1981).

and a conviction may stand so long as there is sufficient proof that the offense occurred within the statute of limitations.

Jones, 182 P.3d 736, at *2 (citations omitted).  The trial court noted that "[u]sually in these types of cases, there seems to be more leniency as to dates." Record, Vol. X, at 14-15.  Numerous other courts have acknowledged that often in cases involving sexual offenses against children, the precise times and dates of the alleged offenses cannot be determined[6].  See e.g. Valentine v. Konteh, 395 F.3d 626, 632, 638 (6th Cir. 2005)("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with

---

[6]    One state judge explained the "lack of federal authority on the issue":

> There are few crimes, other than sexual abuse of children, where such problems arise, and since federal jurisdiction over such crimes is limited, it is not surprising that there is a dearth of federal authority on the question.  As noted above, however, the issue has been addressed by the state courts that see many more sexual assault prosecutions.  And the state courts that have addressed the issue have generally concluded that generic testimony . . . is sufficient to support a conviction.

U.S. v. Hawpetoss, 388 F.Supp.2d 952, 961-62 (E.D.Wis. 2005).  The judge's reasoning in Hawpetoss is persuasive:

> The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct . . . .  Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information . . . .  Finally, the victim must be able to describe the general time period in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us") to assure the acts were committed within the applicable limitation period.  Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction.  (Cites omitted).

Id.  Moreover, a failure to allege precise dates and times in the charging document does not deprive a defendant of his constitutional right to due process where time is not of the essence and the dates used are not picked arbitrarily.  See e.g., U.S. v. Morris, 700 F.2d 427, 429-30 (1st Cir. 1983), cert. denied, 461 U.S. 947 (1983); U.S. v. Hultgren, 713 F.2d 79, 89 (5th Cir. 1983); U.S. v. Roman, 728 F.2d 846, 851 (7th Cir. 1984); U.S. v. McCown, 711 F.2d 1441, 1450-51 (9th Cir. 1983).  Furthermore, a defendant has no federal constitutional or statutory right to a charge framed so as to facilitate an alibi defense.

constitutional notice requirements.")(citing <u>Hunter v. New Mexico</u>, 916 F.2d 595, 600 (10th Cir. 1990); <u>Parks v. Hargett</u>, 188 F.3d 519 (10th Cir. 1999)).  As a consequence, in such cases courts have allowed "greater liberality" in alleging the time of the offense[7]. To paraphrase one state court's observation: "It would be a very weak rule of law that would permit a man" to commit indecent liberties with a child and then say in effect: "You cannot convict me of this crime, as you did not guess (or recall) the right date". <u>Cunningham v. State</u>, 100 Nev. 396, 683 P.2d 500 (Nev.), <u>cert. denied sub nom. Cunningham v. Nevada</u>, 469 U.S. 935 (1984)(citing <u>State v. Rogers</u>, 48 Idaho 567 (1929)).

The rulings by the KCA after initially ordering the State to amend the Information, to the effect that proof of the exact dates and times of the offenses was not essential, were neither contrary to nor an unreasonable application of federal law.  Petitioner does not cite any contrary controlling Supreme Court precedent, and the court's own research indicates that the Supreme Court has not determined that an Information in an indecent liberties case is constitutionally deficient for failure to provide specific dates and times.  <u>See</u> <u>Burbine v. Scribner</u>, 2009 WL 2136303, *23 (E.D.Cal. July 15, 2009)(cited for reasoning, not precedential value); <u>see also</u> <u>State v. Armstrong</u>, 238 Kan. 559, 563, 712 P.2d 1258 (1986)(A specific date and time are not essential elements of the offenses of

---

[7]     Mr. Jones does not argue here, as he did in state court, that the time frame was so indefinite that it prejudiced him in preparing or presenting his alibi defense.  Instead, he makes arguments inconsistent with that position that the defense presented "undisputed evidence that Mr. Jones could not have committed the alleged crimes on any of the dates charged"; conclusive proof "that the incident (with C.J.) could not have happened on Saturday, December 10, 2005 (R. IX, 185)"; and conclusive proof that Mr. Jones "was never alone with N.J. during the time period in question, thus making her claims impossible. (R. IX, 185)." <u>Id</u>. at 3, 5, 7.

indecent liberties with or solicitation of a child.).

Courts have noted that the trial of cases involving sexual offenses against children "usually centers on a basic credibility issue-the victim testifies to (indecent acts by the defendant), and the defendant denies that any wrongful touching occurred". See Hawpetoss, 388 F.Supp.2d at 966. That is precisely what occurred in this case. The crucial issue for decision at petitioner's trial was not the precise day and hour of the alleged acts, but the credibility of each witness's testimony as to whether or not the acts occurred. When the defense moved at sentencing to set aside the verdict or for new trial, again arguing the defendant had proven his alibi, the trial judge noted it appeared "to be almost a sufficiency-of-the-evidence argument" and that it "came down to who was the jury going to believe". The court found:

> While there was some confusion by the witnesses as to the dates, it seemed to the Court, though, that the witnesses were credible – very credible – as to the underlying actions that occurred. Obviously, the jury believed them too. . . . The jury believed the children, that these acts occurred.

Record, Vol. X, at 14-15.

The record of trial supports the trial judge's finding. The child victims in this case clearly and consistently described illegal acts by their father in the family home. Mr. Jones' attempts to establish an alibi did not discredit their accounts of his illicit acts. Turner v. Roberts, 234 Fed.Appx. 867, 870 (10th Cir. 2007). While the defendant denied that he committed the acts, his identity was not at issue. In order to render a verdict, the jury had to judge the credibility of the witnesses and resolve issues of fact. The jury chose to believe the victims' accounts of

defendant's behavior, rather than defendant's denials and arguments that his alibi was conclusive[8].  Such determinations are properly the province of the jury and are not to be revisited by a federal court upon habeas corpus review.  Undoubtedly, the record in this case "supports conflicting inferences."  This court thus presumes "even if it does not appear in the record" that the jury "resolved any such conflicts in favor of the prosecution" and defers to that resolution.  <u>Jackson</u>, 443 U.S. at 326.

Petitioner also contends that the "facts relied upon" by the state court "to affirm the conviction were either incorrect . . . or absent from the record", and that the court "circumvented irrefutable alibi evidence" by "misinterpreting the facts" and "made inferences unsupported by evidence."  <u>Supp</u>. at 9,11.  He similarly asserts that the state appellate court "disregarded the facts in the record and fabricated an explanation for why C.J.'s testimony should have been believed."  <u>Id</u>. at 12.  In support, Mr. Jones correctly alleges that CJ testified his father fondled him in their home on December 10, 2005, in the afternoon when a Chiefs game was on television.  He argues that his alibi for after 11:30 a.m. and his evidence that the Chiefs were not playing and no football game was televised at their residence on that afternoon conclusively

---

[8]     Neither child could testify as to what their father's work hours were. NJ testified they were not a normal 8 to 5, changed at some point, and that sometimes he worked till 6 or 8 and other days would come home early or not work at all.  T. at 110.  On cross-examination, Mrs. Jones was asked several questions regarding defendant's and her work schedules during the months of August through December, 2005.  She too testified that defendant's work hours often varied and that she could not recall many details as to when each parent was home during this time period.   T. at 139-40.   She testified that defendant was gone for approximately a month for army duty in September 2005.  She recalled that CJ and defendant were home alone the evening of Friday, December 9, 2005, and on Saturday morning, December 10, before defendant left home for work.  She testified it was possible they all went to church that Sunday, but she did not remember them going to Wilburn's house that afternoon, though it was possible.

disproved CJ's testimony and thus all evidence of his guilt.

Contrary to petitioner's contentions, the court finds that the evidence relied upon by the state appellate court and cited in its opinion is amply supported by the record. Petitioner's arguments ignore the evidence at trial other than the victim's testimony. That evidence indicated CJ could have been mistaken about the exact day of the offense, and included that he was initially vague about the date, that it was the social worker who first concluded the acts occurred on December 10 from what CJ said during their interview, that this date was presumed thereafter in interviews, and that CJ had a below normal mental capacity and ability to recall dates and numbers[9]. Petitioner also ignores that the jury could have credited CJ's testimony that his father fondled him at their home on December 10, but discounted CJ's testimony or memory that the Chiefs were playing at the time and that it happened after 11:30 a.m. Petitioner likewise ignores that the jury could have believed CJ's testimony that his father fondled him that weekend in the afternoon during the Chiefs game, but discredited his testimony that it

---

[9]    Glenda Jones testified as to CJ's learning disability, low IQ, and special education. She testified that he has a "hard time with dates and understanding" and "difficulty with memorization." T. at 125-26. The social worker, Ms. Tate, testified that on December 13, 2005, she interviewed CJ regarding a report of inappropriate touching. T. at 69. When asked if CJ told her what date it happened, she responded:

> I asked him what day the last incident occurred. He said a few days ago. I attempted to pinpoint a day. I asked him if it was a school day or weekend. He said that he didn't go to school that day. So I said, okay, do you go to church. He said yes. I said, did you go to church that day. No. I said, so was it a Saturday. He said, maybe it was a Saturday, I think. So I concluded it was a Saturday.

T. at 70. Tate also testified: "It was hard to pinpoint a day. And since I concluded that the day was Saturday, we didn't go further into specifics on the day." T. at 72. She also testified that "since we had a hard time narrowing down the day" and "there was a chance that I was leading him to the day," she did not ask him for a specific time. Tate then faxed information to the sheriff's department including the Saturday date.

happened on Saturday and that CJ was elsewhere on that Sunday afternoon. The jury was not required to credit every word of CJ's testimony, and plainly did not, given it found the sodomy charge was not proven.

The KCA's discussion of what the jury could have believed from the evidence was neither a fabrication of facts nor a disregarding of facts in the record. Rather, it is a plain indication that the state court adhered to its own standard and that of the Supreme Court in Jackson to view the evidence in the light most favorable to the state. The jury heard petitioner's alibi evidence, as well as the testimony of the victims, their mother, Officer Myer, and other persons who had interviewed CJ about the incident[10]. The verdict reflects the jury's judgment that Mr. Jones had the opportunity to commit the crimes against CJ and NJ within the time frames in the Information and jury instructions. Even if the jury believed that defendant worked his regular hours on December 10 and most other days in August and September, it still could have found from the evidence that the crimes were committed against CJ "on or about December 10" and against NJ "during the August or September of 2005". Petitioner has not shown that the state court's adjudication of his claim was based on an unreasonable determination of the facts

---

[10] CJ testified on direct that he remembered December 2005, the weekend of December 10, and as to what happened "that day." T. at 41-42. He also testified that his dad was watching a Chiefs game. On cross-examination, defense counsel provided specific days and dates in his questions and simply asked CJ to confirm counsel's statements. For example, CJ answered affirmatively when defense counsel asked him if he "told" the "lady from the S.R.S." that it "happened on Saturday", that he remembered "the Chiefs were playing football", that his "mom and (sister) were away", and "it wasn't on Sunday because on Sunday the whole family had gone to church that morning" and to "Wilburn's house later that day". T. at 47-48. Defense counsel showed CJ newspapers indicating the Chiefs played at Dallas the next afternoon on Sunday December 11, and CJ agreed the Chiefs had not played on December 10, but again agreed that he believed the incident happened on that Saturday. T. at 58-61.

in light of the evidence.

Petitioner also suggests that the evidence was insufficient because the State presented no corroborative evidence and that the victims' testimony was coached and contradictory. It is not clear that these allegations were presented to the state courts. Nevertheless, the court finds that they are without merit. Mr. Jones does not cite any established Supreme Court precedent as containing a corroboration requirement. Nor could he, because neither the Constitution nor any federal law requires corroborative evidence in addition to a victim's testimony in order to convict a defendant of aggravated indecent liberties with a child. See Carmell v. Texas, 529 U.S. 513, 542 (2000); U.S. v. Danzey, 594 F.2d 905, 916 (2nd Cir.)(per curiam), cert. denied, sub nom. Gore v. U.S., 441 U.S. 951 (1979)(The testimony of a single uncorroborated witness is sufficient to establish a defendant's guilt beyond a reasonable doubt, even if that witness's testimony is not entirely consistent.); see also State v. Ulate, 42 Kan.App.2d 971, 219 P.3d 841 (Kan.App. 2009)(The testimony of the victim alone is sufficient to support a conviction.); State v. Borthwick, 255 Kan. 899, 904, 880 P.2d 1261 (Kan. 1994)(same). In any event, while there was no medical evidence and no eyewitness testimony other than that of the victims, the testimony of the two children was corroborated by the testimony of their mother[11] and Officer Myer describing defendant's

---

[11] Glenda Jones, wife of Brad Jones and mother of CJ and NJ, testified to the following. After CJ's interview with the SRS, she had several telephone conversations with defendant until a deputy informed her of all the allegations her children had made and recommended they stop talking. She agreed, but he tried to call her numerous times. Jones eventually walked in the home and refused to leave, saying he came for his gun. T. at 131. He stated, "my life is pretty much over now, I've lost everything, my family is not going to have anything to do with me now." T. at 132. Mrs. Jones then called 911. She talked to defendant several times on the telephone after he left. She testified that Jones stated "he was

incriminating behavior and statements[12]. The testimony of the officers that interviewed CJ was also corroborative because it showed consistency in his statements.

In sum, this court has independently reviewed all the evidence in the record in the light most favorable to the prosecution, and is satisfied that the testimony of the victims and others at trial provided credible evidence from which any juror could have found the complainants' allegations true, petitioner's alibi defense not conclusive, and the essential elements of the offenses beyond a reasonable doubt. Petitioner has failed to carry the heavy burden imposed by § 2254(d) to show that the KCA's ruling that there was sufficient evidence to support his convictions, was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the

---

sorry, he couldn't stop himself, he had no control" and talked about hurting himself. T. at 133. When questioned further, she testified that he said he couldn't stop himself from hurting the kids." T. at 133.

Atchison County Sheriff's Officer Myer testified as follows. On December 15, 2005, dispatch received a call that Jones had a gun and was suicidal and very angry. Myer and others searched for and located Jones in Leavenworth, where he was taken into custody. Myer had known Brad Jones for some time, and Jones stated to him that he had lost his wife, kids, family, had "ruined their lives", and was "sorry for what he had done.' T. at 147-48. Jones also told Myer that he had "plans to go to his parents' grave and kill himself" and repeated that he had ruined the lives of his kids, his wife and himself and wanted to be dead. T. at 148-49.

[12] Defendant admitted he had a firearm and was going to commit suicide when arrested, but explained that his family "disappeared" on him and his reputation in town as well as his father's and brother's were going to be stained regardless of whether the charges were disproven. T. at 184-85. He also testified that his "focus at the time was trying to get ready to go to Iraq" and "that was the worry that (he) had for (his) family." T. at 183. He testified he did not remember telling Myer he ruined his kids' lives. T. at 188. He denied fondling NJ "sometime in August or September 2005" and denied fondling CJ "on December 10, 2005." T. at 185. On cross-examination, defendant testified he did not work on December 11, went to church then home, where he played Play Station until the Chiefs game came on, and then watched the game. He testified "they all came home later that night." T. at 186.

United States.  Accordingly, petitioner is not entitled to federal habeas relief.

VI.  *Conclusion*

IT IS THEREFORE ORDERED that this Petition for relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

SO ORDERED this 6th day of May, 2010, at Wichita, Kansas.

s/ Wesley E. Brown
Wesley E. Brown
Senior U.S. District Judge